IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KYLIE PRUITT,<br><br>*Plaintiff,*<br><br>v.<br><br>T-MOBILE USA, INC. *a Delaware corporation,*<br><br>*Defendant.* | Civil Action No. 2:23-cv-1950<br><br>Hon. William S. Stickman IV |

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiff Kylie Pruitt ("Pruitt") filed suit against Defendant T-Mobile USA, Inc. ("T-Mobile"), alleging that T-Mobile discriminated against her on the basis of her religion, pregnancy, and disability. At Counts I and II of the complaint ("Complaint") respectively, Pruitt claims that T-Mobile violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981 *et seq.* ("Title VII") and the Pennsylvania Human Relations Act, 43 Pa. Stat. § 951 *et seq.* ("PHRA") by failing to accommodate and wrongfully terminating her because of her religion. Pruitt also brings claims for sex discrimination related to her pregnancy (Count III), disparate impact (Count IV), and retaliation (Count V)[1] under Title VII. Pruitt's final two counts are brought under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq.* She alleges one count of disability discrimination for wrongful termination and failure to accommodate (Count VI) and a claim of unlawful interference (Count VII). Presently before the Court is T-Mobile's Motion to Dismiss

---

[1] The parties informed the Court at oral argument on April 16, 2024, that they agreed to voluntarily dismiss Pruitt's Count V claim for retaliation. (ECF No. 15). The Court will accordingly not evaluate the sufficiency of the claim's pleading and will dismiss it by Order of Court to follow.

1

Plaintiff's Complaint ("Motion"). (ECF No. 5). For the reasons set forth below, T-Mobile's Motion will be granted in part and denied in part.

## I. FACTUAL BACKGROUND

At all relevant times, Pruitt was employed by T-Mobile as a major account executive. (ECF No. 1, ¶¶ 10, 13). Beginning in mid-March 2020, as a result of the COVID-19 pandemic, Pruitt began working remotely. (*Id.* ¶ 16). On or about August 31, 2021, T-Mobile announced the implementation of a policy that would designate all badge-controlled office locations as "COVID-19 vaccinated-only office spaces" (the "Policy"). (*Id.* ¶ 19). The Policy did not include all T-Mobile offices or locations, such as retail stores, where employees working in these settings could remain unvaccinated if they so chose.[2] (*Id.* ¶ 22). The location of Pruitt's job was in one of those announced "vaccination-only work location[s]." (*Id.* ¶ 20).

T-Mobile allowed its employees to submit accommodation exemptions. (*Id.* ¶¶ 33–35). Pruitt is a "Bible-believing Born Again Christian whose beliefs are guided by the Holy Spirit, prayer and the Holy Bible." (*Id.* ¶ 41). Pruitt first submitted a request for religious accommodation on or about September 17, 2021, which detailed her Christian beliefs pertaining to the "sanctity of human life," opposition "to receiv[ing] any product that uses aborted fetal cells," and "that she is required by the Bible to refrain from receiving any vaccine." (*Id.* ¶¶ 36, 42–48). She avers "that she has not received any vaccinations as an adult" and included this on her religious exemption

---

[2] At the April 16, 2024, oral argument on the Motion (ECF No. 15), T-Mobile explained that its policy requiring office employees (who did not interact with the public) to be fully vaccinated, while exempting retail employees (who had worked among the public throughout the pandemic) from the vaccine requirement arose from its perception that office workers would refuse to return to in-person work environments absent universal vaccination, different than the retailers, who had become accustomed to the risk. This is one of the many paradoxes of the COVID era in which the public and private sectors (not infrequently due to government pressure) regularly imposed seemingly arbitrary diktats upon workers and businesses. *See e.g., County of Butler v. Wolf*, 486 F.Supp.3d 883, 927 (W.D. Pa. 2020).

request. (*Id.* ¶ 49). T-Mobile granted her exemption from on or about October 22, 2021,[3] through January 1, 2022. (*Id.* ¶ 51). While continuing to work from home, as directed by T-Mobile, Pruitt was verbally informed on or about February 10, 2022, that it would no longer accommodate her religious exemption and provided no explanation. (*Id.* ¶¶ 52–54).

In January 2022, Pruitt informed her manager that she was pregnant. (*Id.* ¶ 57). On or about February 11, 2022, she submitted two medical exemptions from the Policy, requesting medical accommodation for her pregnancy. (*Id.* ¶¶ 37, 58). Pruitt submitted documentation from her primary care provider and midwife both explaining they were of the opinion that Pruitt should not receive a COVID-19 vaccine. (*Id.* ¶¶ 59–64). T-Mobile's independent physician reviewed the submitted documentation, spoke with Pruitt's two medical care providers, and determined that Pruitt was eligible to receive the vaccination per current Centers for Disease Control and Prevention guidelines. (*Id.* ¶¶ 65, 70). As a result, on April 11, 2022, T-Mobile denied Pruitt's request because it was only honoring medical exemptions that were due to an employee's known allergy to one of the ingredients in the COVID-19 vaccines. (*Id.* ¶¶ 71–72). Pruitt alleges that there was no way of knowing whether she or her unborn child would have an allergic reaction to the vaccine. (*Id.* ¶ 73).

On or about April 19, 2022, Pruitt requested a temporary work-from-home accommodation until she gave birth under her previously submitted medical accommodation request. (*Id.* ¶ 77). Two days later,[4] T-Mobile notified Pruitt that it was unable to process her request to work from home. (ECF No. 1, ¶ 81). Sometime thereafter, Pruitt submitted a request for short-term disability

---

[3] The Complaint alleges that this occurred in the year 2022, but the Court believes this to be an error given the timeline of events in this suit.

[4] At oral argument on April 16, 2024 (ECF No. 15), Pruitt's counsel clarified that the April 21, 2023, date in the Complaint is incorrect, and the year instead should be 2022.

until her September 5, 2022, delivery date on the advice of her doctor "due to complications associated with [her] pregnancy." (*Id.* ¶¶ 86–87, 90); (ECF No. 6-1, p. 1). Pruitt's request for benefits was approved for one month and denied for the remaining duration until her due date citing inadequate supporting medical documentation. (ECF No. 1, ¶¶ 88–89).

Seemingly within this same timeframe, Pruitt submitted for and was granted an unpaid medical leave of absence through her delivery date. (*Id.* ¶ 90). While on unpaid leave, Pruitt filed an Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination (the "Charge") on July 29, 2022. (ECF No. 6-1). She memorialized all of the facts detailed above and in relevant part alleges:

> I believe that [T-Mobile] has discriminated and retaliated against me as recorded above because of my religion, Christian and sex, female (pregnancy related condition) in violation of [Title VII], whereas it has singled-me out and treated me in an inconsistent manner, especially with respect to the exemptions I requested as accommodations, received in part and that were taken away, while creating a hostile work environment due to such adverse terms and conditions of employment while negatively affecting my ability to perform my job satisfactorily during this time period of the pandemic.

(*Id.* at 2).

Pruitt gave birth to her son in September 2022.[5] After Pruitt's unpaid medical leave of absence ended on September 5, 2022, her twelve weeks of paid maternity leave under the Family and Medical Leave Act began. (ECF No. 1, ¶¶ 90–91). Pruitt's maternity leave ended on December 8, 2022, and she returned to work remotely from home, as approved by T-Mobile. (*Id.* ¶ 93). Pruitt worked for about approximately a week and a half before she was terminated on December 21, 2022. (*Id.* ¶ 94).

---

[5] Pruitt did not deliver her son on December 16, 2022, as alleged in the Complaint. (*See* ECF No. 1, ¶ 75). Pruitt's counsel, at the April 16, 2024, oral argument on the motion, represented that Pruitt gave birth sometime in September 2022. (ECF No. 15).

## II.   LEGAL STANDARD

A motion to dismiss filed under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although a court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

Attached to T-Mobile's brief in support of its Motion (ECF No. 6) is Pruitt's Charge (ECF No. 6-1), a letter from the Pennsylvania Human Relations Commission ("PHRC") setting forth its

5

determination of the Charge (ECF No. 6-2), and a Right to Sue Letter that Pruitt received from the EEOC (ECF No. 6-3). Generally, a court may not consider extraneous documents when reviewing a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). If parties present matters outside the pleadings and the court does not exclude them, the motion must be converted to a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). There is, however, an exception to the general rule where a "document integral to or explicitly relied upon in the complaint" may be considered "without converting the motion [to dismiss] into one for summary judgment." *In re Burlington*, 114 F.3d at 1426 (citation omitted); *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 493 (3d Cir. 2017). This exception allows a district court to consider an "undisputedly authentic document" that is an exhibit attached to a defendant's motion to dismiss if the plaintiff's claims are based on the document. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Because they are authentic and integral to the Complaint, the Court will consider the Charge, the determination of the PHRC, and the Right to Sue Letter (ECF Nos. 6-1, 6-2, 6-3) attached to T-Mobile's brief in support of its Motion (ECF No. 6).

### III. ANALYSIS

**A. Pruitt failed to exhaust administrative remedies related to her disability discrimination, breastfeeding, disparate impact, and unlawful interference claims.**

Title VII, the PHRA, and the ADA all require the exhaustion of administrative remedies prior to the filing of a lawsuit. *See* 42 U.S.C. §§ 2000e-5(b), (e)(1), (f)(1); 43 P.S. §§ 959, 962; 42 U.S.C. § 12117(a) (adopting Title VII enforcement scheme and remedies for ADA). To do so, a complainant must file a charge of discrimination with the EEOC for both Title VII and ADA

discrimination allegations, and the PHRC for alleged PHRA violations. *See Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013); *Churchill v. Star Enters.*, 183 F.3d 184, 190 (3d Cir. 1999); *Clay v. Advanced Comput. Applications, Inc.*, 559 A.2d 917, 921 (Pa. 1989). The charge must be filed with the PHRC within 180 days of the last discriminatory act, *see* 43 P.S. § 959(h), and with the EEOC within 300 days of the last discriminatory act (so long as the charge was properly cross-filed with the state agency), *see* 42 U.S.C. § 2000e-5(e)(1).

A plaintiff "must wait until the EEOC issues a right-to-sue letter before she can initiate a private action." *Barzanty v. Verizon PA, Inc.*, 361 F. App'x 411, 413 (3d Cir. 2010) (citing *Burgh v. Borough Council*, 251 F.3d 465, 470 (3d Cir. 2010)). This ensures that the EEOC has had "the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court." *Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996). Once the letter is received and the suit is filed, the suit is then "limited to claims that are within the scope of the initial administrative charge." *Barzanty*, 361 F. App'x at 414 (citing *Antol*, 82 F.3d at 1296)).

More specifically, a particular claim is deemed exhausted if it is "fairly within the scope of (1) the prior EEOC complaint, or (2) the investigation arising therefrom." *Simko v. U.S. Steel Corp.*, 992 F.3d 198, 207 (3d Cir. 2021) (quoting *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984)). This is a "highly fact specific" inquiry, and courts must carefully examine "the prior pending EEOC complaint and the unexhausted claim on a case-by-case basis before determining that a second complaint need not have been filed." *Id.* at 207 (quoting *Robinson v. Dalton*, 107 F.3d 1018, 1024 (3d Cir. 1997)). "[T]he original charge is the touchstone of [the] exhaustion analysis." *Id.* at 210.

i. <u>Wrongful termination</u>

T-Mobile first argues that Pruitt's wrongful termination claims are barred because she "did not raise any claims about her termination in her EEOC Charge and never filed an Amended Charge after she was terminated." (ECF No. 6, p. 5). It asserts that termination is a discrete discriminatory act which must be timely exhausted through the administrative process, specifically by filing an amended charge "that allege[s] a discriminatory theory based on her termination." (ECF No. 10, pp. 2–3). In response, Pruitt asserts that her termination was inevitable upon T-Mobile's denial of her requests for either a religious or medical exemption for its Policy and her continued refusal to receive the vaccination. (ECF No. 9, p. 6).

Pruitt's claims surrounding her termination do not fall squarely within the scope of her Complaint because she filed the Charge months prior to her termination. The Charge alleges that she was discriminated and retaliated against because of her "religion, Christian and sex, female (pregnancy related condition) in violation of [Title VII]," with no mention of termination because it had not happened. (ECF No. 6-1, p. 2). Pruitt made no claim related to her termination.

Under the second prong, "when determining whether a claim fairly or reasonably falls within the investigation arising from a [prior EEOC] charge, courts consider (1) whether the claim arises from the same set of facts that support the original charge and (2) whether the claim advances the same theory of discrimination as the original charge." *Simko*, 992 F.3d at 209. Pruitt alleges in the Complaint that her termination was a result of her noncompliance with the Policy. (ECF No. 1, ¶¶ 101, 104, 115). The set of facts that gave rise to the Charge—the denials of her requests for exemptions and accommodations because of the imposed Policy—are identical to Pruitt's claims as to why she was subsequently terminated. Based on this set of facts, the Court finds that Pruitt alleged religious and sex discrimination.

Pruitt's claims for wrongful termination because of her religion and sex brought under Title VII and the PHRA (Counts I, II, and III) reasonably fell within the investigation arising from the Charge, and thus she sufficiently exhausted the necessary administrative remedies.

Pruitt, however, advances a different theory of discrimination— disability discrimination under the ADA— that arises from a tangential, but different set of facts, at Count VI. Pregnancy alone is not a disability within the meaning of the ADA. *See Matthews v. New Light, Inc.*, No. 22-427, 2022 WL 11966542, at *3 (W.D. Pa. Oct. 20, 2022) (collecting cases). A plaintiff must allege that she experienced complications or impairments caused by her pregnancy in order to sufficiently establish a claim of disability discrimination. *See id.*

In her Charge, Pruitt merely states that she applied for a medical exemption from the Policy "for reasons related to my pregnancy and other reasons," and fails to provide any greater specificity about her condition. (ECF No. 6-1, p. 1). She again vaguely describes her physician's recommendation that "due to complications associated with my pregnancy," she should take a leave of absence until her baby is born. (*Id.*). Pruitt's ambiguous mention of "complications" is insufficient. *See Oliver v. Scranton Materials, Inc.*, No. 3:14-CV-00549, 2015 WL 1003981, at *8 (M.D. Pa. Mar. 5, 2015) (finding plaintiff's recitations "that some complications and surgery occurred" during her pregnancy were insufficient and pled "in talismanic fashion"). These allegations, without more, did not reasonably put the EEOC on notice that Pruitt had a disability, and that T-Mobile was discriminating against her because of this disability.

Additionally, Pruitt's disability discrimination claim is grounded in a different set of facts. While this claim arises from the same pregnancy as the other discrimination claims she pled, she relies on her vaguely alleged conditions and impairments resulting from her pregnancy to plead this claim. These allegations are not part of her claims for religious or sex discrimination. Pruitt's

Count VI for wrongful termination in violation of the ADA will be dismissed for failure to exhaust administrative remedies.

      ii.    <u>Breastfeeding, disparate impact, failure to accommodate, and unlawful interference</u>

T-Mobile also argues that the Charge did not raise a claim regarding her breastfeeding (Counts III and IV), disparate impact based on sex discrimination related to pregnancy (Count IV), or that T-Mobile failed to accommodate her and unlawfully interfered with her rights because of a pregnancy-related disability (Counts VI and VII). (ECF No. 6, p. 5). As a result, T-Mobile contends that it is not "reasonable to expect the EEOC's investigation to include these claims," and thus Pruitt failed to exhaust her administrative remedies. (*Id.*); (ECF No. 10, pp. 3–4). Pruitt responds that T-Mobile was on notice of all of her claims because each was "either fairly raised in the Charge or, if a reasonable investigation had occurred, would have reasonably grown out of the Charge." (ECF No. 9, p. 10).

The Court finds that Pruitt failed to exhaust administrative remedies for her wrongful termination disability discrimination claim because she did not allege sufficient facts regarding what "complications" she incurred because of her pregnancy. The same rationale applies to her remaining claims under the ADA. Therefore, her additional theory at Count VI of T-Mobile's failure to accommodate her disability in violation of the ADA and her Count VII claim for unlawful interference pursuant to the ADA will be dismissed for failure to exhaust administrative remedies.

The Court agrees that on the face of the Charge, Pruitt made no claims regarding breastfeeding. Instead, the Charge was limited to the events prior to Pruitt giving birth to her child. Any claims for sex discrimination related to her breastfeeding do not fall squarely within the scope of the Charge. Also, any claim of discrimination post-childbirth arises from a different set of facts that did not fairly or reasonably fall within the investigation arising from the Charge. Pruitt cannot

proceed on her Title VII sex discrimination claims (Counts III and IV) on a theory related to breastfeeding because she did not exhaust administrative remedies related to these allegations.

As to Pruitt's Count IV disparate impact claim alleged under Title VII, the Court finds that Pruitt did not exhaust her administrative remedies. The Charge, on its face, does not set forth a claim of disparate impact. Pruitt specifically addresses how the Policy affects her and her pregnancy individually, making no mention of how others similarly situated were also impacted. *See Ptasznik v. Univ. of Pa.*, 523 F. App'x 156, 160–61 (3d. Cir. 2013) (affirming district court's holding that the plaintiff did not exhaust administrative remedies as to his disparate impact claim because the charge discussed the employer's actions "only in so far as they affect" the plaintiff with no mention of harm to other similarly-situated employees). In addition to solely recounting her own experience as a result of T-Mobile's accommodation denials, she also stated that the company "singled-me out and treated me in an inconsistent manner." (ECF No. 6-1, p. 2). Pruitt limited her grievances to her personally and individually, based on her own religious beliefs and pregnancy concerns. *See Houle v. Walmart Inc.*, 447 F. Supp. 3d 261, 277 (M.D. Pa. 2020) (concluding that the plaintiff exhausted administrative remedies related to her disparate impact claim because "the charge spoke about other employees as well"). It is not reasonable to conclude that the Charge put the EEOC on notice that the Policy disparately impacted other pregnant women. Pruitt's Count IV claim for disparate impact under Title VII will be dismissed for failure to exhaust administrative remedies.

**B. Pruitt pleads facts sufficient to establish claims of religious discrimination.**

"Under Title VII, it is unlawful for an employer to 'discharge ... or otherwise to discriminate against any individual with respect to h[er] compensation, terms, conditions or privileges of employment, because of ... religion.'" *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 319 (3d Cir. 2008) (alteration in original) (quoting *Shelton v. Univ. of Med. &*

*Dentistry of N.J.*, 223 F.3d 220, 224 n.4 (3d Cir. 2000)). An employer "must make reasonable accommodations for its employees' religious beliefs and practices unless doing so would create an 'undue hardship' for the employer. *Id.* (citation omitted). Similarly, the PHRA makes it unlawful for any employer to discriminate against an individual because of "religious creed." 43 P.S. § 955(a). The Court considers Pruitt's Title VII and PHRA claims together. *See Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 n.5 (3d Cir. 2006) ("We construe Title VII and the PHRA consistently."); *Burgh*, 251 F.3d at 469 ("The analysis of [Title VII and PHRA] claims is identical."); *Bailey v. Storlazzi*, 729 A.2d 1206, 1211 n.6 (Pa. Super. 1999) ("The PHRA is generally applied in accordance with Title VII.").

To plausibly allege a *prima facie* case for religious discrimination, an employee must show that (1) she held a sincere religious belief that conflicted with a job requirement, (2) she informed her employer of the conflict, and (3) she was disciplined for failing to comply with the conflicting requirement. *Fallon*, 877 F.3d at 490. Pruitt alleges that T-Mobile religiously discriminated against her by failing to accommodate her religious beliefs and practices and her refusal to comply with the Policy led to her termination. (ECF No. 1, ¶¶ 101, 103–04, 115).

T-Mobile asserts that Pruitt fails to plead a claim for religious discrimination because her "decision to refuse the vaccine did not amount to a sincerely held religious belief that conflicted with the vaccine requirement." (ECF No. 6, p. 9). It provides links to websites explaining that the Novavax vaccine did not use human fetal cell lines or tissues in its development and emphasizes that receiving this particular vaccine would not conflict with Pruitt's stated religious principles. (*Id.* at 7). Lastly, T-Mobile provides a number of cases where courts found that a plaintiff merely stating that he or she believes that his or her body is a temple as the basis for their vaccination objection is insufficient to plead a religious discrimination claim. (*Id.* at 7–8).

12

Pruitt argues that her Complaint sufficiently alleges how being a "Bible-believing Born Again Christian" and her corresponding beliefs conflict with receiving any vaccine. (ECF No. 9, pp. 11–12). Pruitt emphasizes that the COVID-19 vaccination especially contradicts her religious principles because she believes that all available COVID-19 vaccines had some degree of connection to aborted fetal cell lines. (*Id.*). In its reply, T-Mobile highlights that it does not dispute the sincerity of Pruitt's beliefs nor that she is religious. (ECF No. 10, p. 4). Rather, it contends that Pruitt has asserted insufficient facts that she had "a sincerely held religious belief [that] conflicted with a job requirement or required accommodation under the law." (*Id.*). T-Mobile reiterates that Pruitt's general objection to all vaccines because she believes that her body is a temple is insufficient. (*Id.* at 4–5).

The Court finds that Pruitt pleads sufficient facts to establish that she has a sincerely held religious belief that conflicts with the Policy. She offers two reasons why the COVID-19 vaccination violates her religion: (1) that she has not received any vaccinations as an adult and (2) that all available COVID-19 vaccines available at the time "were developed and produced from, tested with, researched on, or otherwise connected with the use of aborted fetal cell lines." (ECF No. 1, ¶¶ 45, 49). The Complaint alleges plausible connections between these sentiments and her faith. Dismissal of Counts I and II, Pruitt's religious discrimination claims, is unwarranted.

### C. Pruitt makes out a plausible claim for sex discrimination related to her pregnancy.

Title VII additionally prohibits employers from "discriminat[ing] against any individual … because of such individual's … sex." 42 U.S.C. § 2000e-2(a)(1). The Pregnancy Discrimination Act, an amendment to Title VII, set forth that the terms "because of sex" and "on the basis of sex" encompass "pregnancy, childbirth, or related medical conditions," and thus women affected by these circumstances "shall be treated the same for all employment-related purposes." § 2000e(k).

Discrimination exists "whenever an employee's pregnancy is a motivating factor for the employer's adverse employment decision." *In re Carnegie Ctr. Assoc.*, 129 F.3d 290, 294 (3d Cir. 1997) (citing 42 U.S.C. § 2000e-2(m)). A *prima facie* case of pregnancy discrimination requires a showing of the following: (1) plaintiff is or was pregnant and the employer had actual knowledge of plaintiff's pregnancy, (2) plaintiff was qualified for the position at issue, (3) plaintiff suffered an adverse employment action, and (4) there was a nexus between plaintiff's pregnancy and the adverse employment action. *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 365 (3d Cir. 2008).

Pruitt pleads that T-Mobile discriminated against her because of her pregnancy by denying her a reasonable accommodation in lieu of receiving the COVID-19 vaccine and she was wrongfully terminated thereafter. (ECF No. 1, ¶¶ 122, 124, 126). In seeking dismissal of this claim, T-Mobile argues that Pruitt admitted that her pregnancy was accommodated, and thus she cannot state a claim for sex discrimination. (ECF No. 6, pp. 9–10). It notes that she acknowledges that T-Mobile "granted her an accommodation from the vaccine requirement by providing her leave through the end of her pregnancy." (*Id.* at 10). T-Mobile contends that "[s]ince the Complaint admits this leave occurred, [Pruitt] has failed to state a claim for failure to accommodate her pregnancy." (*Id.*). In response, Pruitt argues that T-Mobile discriminated against her by not granting her an accommodation for breastfeeding. (ECF No. 9, pp. 15–16). She then extensively details the unknowns surrounding pregnant and breastfeeding women getting the COVID-19 vaccination and the importance of protecting expectant and new mothers from workplace discrimination. (*Id.* at 14–17). In its reply, T-Mobile asserts that Pruitt does not address or establish facts to refute her admission that T-Mobile accommodated her pregnancy by granting her leave, nor any way that the company failed to provide her with accommodations thereafter. (ECF No. 10, p. 6).

As discussed above, Pruitt cannot proceed on her sex discrimination claims based on a theory related to her breastfeeding because she did not exhaust administrative remedies related to these allegations. Thus, her claim may only proceed related to the events prior to her giving birth.

The first three elements of the pregnancy discrimination *prima facie* case are satisfied. In her Complaint, Pruitt pleads that she was pregnant, and T-Mobile knew this at the time of the alleged discriminatory actions. (ECF No. 1, ¶¶ 51, 119–20). She next avers that she "was qualified in all respects to do her job competently," and even while working remotely in April 2022, "was top in her Department in sales for the entire nation." (*Id.* ¶¶ 18, 121). Third, Pruitt alleges that she was wrongfully terminated from her position, which "was an adverse employment action that materially and adversely changed the overall terms and conditions of her employment." (*Id.* ¶ 124).

The final element requires Pruitt to plausibly allege a sufficient nexus between her pregnancy and the adverse employment action she encountered. This nexus can be established by pleading that: (1) similarly situated non-pregnant employees were treated better than the plaintiff, (2) the temporal proximity between the pregnancy and the adverse action is unusually suggestive, or (3) a review of all the record evidence supports an inference of discrimination. *Ciocca v. Heidrick & Struggles, Inc.*, No. 17-5222, 2020 WL 1550748, at *6 (E.D. Pa. Apr. 1, 2020) (citations omitted).

The Court finds that the temporal proximity between Pruitt's pregnancy and her termination is unusually suggestive. While there is no bright-line rule for what amount of time demonstrates unusually suggestive behavior, "a span of days, and not months, satisfies the requirement because of the 'unusually suggestive' timing." *Ahern v. Eresearch Tech., Inc.*, 183 F. Supp. 3d 663, 669–70 (E.D. Pa. 2016) (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271,

279 n.5 (3d Cir. 2000)). While the timing of when Pruitt first went on leave is unclear, the Complaint sets forth that she returned to work on December 8, 2022. (ECF No. 1, ¶ 92). She was terminated a week and a half later on December 21, 2022. (*Id.* ¶ 94). This span of days rather than months is unusually suggestive of discriminatory conduct. *See Ahern*, 183 F. Supp. 3d at 669–70 (citation omitted). At this stage, where the Court is to evaluate all facts alleged in a light most favorable to Pruitt, it finds that she has adequately pled a *prima facie* case of sex discrimination based on her pregnancy. Discovery will allow for the development of a more expansive record that recounts what occurred from the time Pruitt returned to work to her termination. T-Mobile's Motion will be denied as to Count III.

### IV.   CONCLUSION

For the reasons set forth above, T-Mobile's Motion to Dismiss Plaintiff's Complaint (ECF No. 5) will be granted in part and denied in part. The Motion will be granted as to Pruitt's claims at Counts IV, VI, and VII and denied as to Counts I, II, and III. Since the parties agreed to the voluntary dismissal of Count V, this claim will also be dismissed. An Order of Court will follow.

BY THE COURT:

/s/ William S. Stickman IV

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

5/16/24
Dated